No. 10,352.

## HALE *v.* BURFORD, ADMINISTRATOR.

Decided April 2, 1923.

Proceeding involving the payment of a widow's allowance. Decree that the allowance had been paid.

### *Reversed.*

1. PROBATE LAW—*Widow's Allowance.* The remarriage of a widow does not divest her or her minor children of an allowance already vested before her remarriage.

   A widow's allowance is vested when the court enters an order approving the estimate of the appraisers and setting aside specific articles of property to her.

2. *Widow's Allowance.* A widow's allowance is not a debt, or an interest in the estate, but a preferred claim in the nature of costs of administration.

3. APPEAL AND ERROR—*Sufficiency of Evidence.* On review, it is held that the finding and judgment of the court below, that a widow's allowance had been paid in full, has no support in the record.

4. PROBATE LAW—*Widow's Allowance.* The statutes of Colorado relating to widow's allowance, give to the widow the absolute right and power to make a selection in satisfaction of her allowance, either in whole or. in part, of the property set aside to her by the appraisers, or to take the entire amount in money, or a part in money and a part in property, which right she may not be compelled to relinquish.

*Error to the County Court of Alamosa County, Hon. Frank A. Brownell, Judge.*

Mr. JAMES P. VEERKAMP, for plaintiff in error.

No appearance for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

DECEMBER 1, 1919, Lewis W. Burford was appointed,

and thereupon at once qualified as, the administrator of the estate of his deceased brother, Ben S. Burford. Decedent left surviving him his widow, Flora Burford, and four minor children, who, at the time of his death were, and for several years prior thereto, had been residing with him at the family home on his farm in Alamosa county, Colorado. On the day the administrator qualified, the court entered an order appointing three appraisers to estimate the value of the widow's allowance, which the appraisers made, and returned their findings to the court on December 9th, whereby there were set aside and given to the widow certain specific articles of the personal property of the estate aggregating in value $1800. This appraisement was approved by the court. The record does not show whether any formal application was made, either by the administrator or the widow, for the order appointing the appraisers, or the order approving their report, but none of the parties to this litigation questions the validity of the allowance, and no attempt has been made to set it aside. Indeed, all the parties rely upon it and recognize it. The effect of the order was to segregate from the estate the property included therein, of the value of $1800, and to vest the same in the widow as of the date of the approval order. Of this property none was turned over by the administrator, or received by the widow, as she contends, except two cows, two hogs, and a pony, which she says were of the aggregate value of $180. No other or further action concerning this order was had until July 8, 1921, when the widow filed in the county court her petition for a widow's allowance, and 8 days later when she filed an amended petition in which she alleged that she had received only the property just mentioned and had exercised her right of election under the statute to take the balance of the total award of $1800 in money, which amounted to $1620, and asked for an order of the court directing the administrator to execute the order by paying her this balance. To the amended petition there were filed two separate answers: one, by the administrator, the other,

by creditors of the estate whose claims had been approved, these answers being substantially the same. The objections urged, which fairly present the questions for determination, may be considered and disposed of in the following order:

1. The objectors say that, though Mrs. Burford was the widow of the intestate at the time when the court approved the order of allowance, she ceased to be his widow in April, 1921, when she married Marion Hale, about three months before the amended petition was filed. The argument is, that since the widow's allowance is made only for one who is actually a widow, and as a widow ceases to be a widow upon her re-marriage, she is not entitled to the allowance which she asked in her amended petition. The exigencies of the present case do not require a decision as to when a widow ceases to be a widow. That may be a debatable question. While it has been held that re-marriage of a widow may bar her from any subsequent claim upon an estate, and while a previous order of allowance may thereupon terminate without any further order of the court, such re-marriage does not divest her, or her minor children, of allowances already vested before the re-marriage. 18 Cyc. p. 393, and cases cited. If this allowance to Mrs. Burford did not vest by operation of the statute immediately upon the death of her husband, as to which we express no opinion, it certainly did vest December 9, 1919, long before the re-marriage, when the court approved the estimate of the appraisers and set aside specific articles of property to her, subject, of course, to her right of relinquishment and an election of other kinds of property. Her rights under the order were not divested by her subsequent marriage.

2. Another objection is that no formal application for an order of allowance was made within the period of one year after letters of administration were granted. This ground of objection is based upon the erroneous assumption that the widow's allowance is in the nature of a debt or demand of the fifth class against the estate, and, unless

presented within the year, the same is barred by the statute of non-claims.  Compiled Laws of Colorado, 1921, section 5331.  This Court has held that the widow's allowance is not a debt or demand of that nature, that it is not a debt of, or an interest in, the estate, but a preferred claim, in the nature of costs of administration superior to claims of the fifth class, which are ordinary contract debts against the estate.  *Remington v. Remington,* 72 Colo. 132, 209 Pac. 802; *In re Madril's Estate,* 71 Colo. 123, 204 Pac. 483, in which previous decisions of this Court, to the effect noted, are cited.  See also *Grover v. Clover,* 69 Colo. 72.  The objection is wholly without merit.

Furthermore, if it be true, as contended, that the widow, within a reasonable time, must make a proper demand upon the administrator and the court for an order of allowance, that is not important here, for the county court made the order, which all the parties to this litigation have recognized as valid, and whether it was made with or without a request of the widow or the administrator is immaterial.

3.  All the parties admit the order was, at least, in part, complied with by the administrator in turning over to the widow the two cows, two hogs and a pony.  The objectors, however, say that other items of personal property of the estate, all aggregating about $300 in value, were also received by her, and that she was also given, and received, as the result of an agreement between the administrator and a Mr. Duncan, the purchaser of the lands of the estate, a lease of a portion thereof for five years, the value of which was $1500, and that by reason of the foregoing the widow already received, before her amended petition was filed, property of the value of $1800.

The court did make a finding that the widow had received, of the property awarded to her by the appraisers, certain articles of the value of about $300, and that she accepted, in lieu of the other articles awarded, the above mentioned lease which was of the value of $1500.  If the evidence sustains this finding, the judgment should not

be set aside. There was evidence concerning the subject matter of this finding of the court. The administrator and the objectors have not appeared in this Court and for this reason we have not relied alone upon the abstract of the record made by counsel for the widow, who has sued out this writ, but have resorted to the transcript and carefully read the evidence. The finding and judgment below find no support in the record. Section 5347, Compiled Laws of Colorado, 1921, provides that where a decedent leaves a widow residing in this state, she shall be allowed to have and retain as her sole and separate property certain described articles, not to exceed, in any event, the sum of $2,000, in value, and section 5349, of the same compilation, provides that when an inventory shall have been made of the personal estate, the widow may relinquish her right to any, or all, of the specific articles of property allowed her by section 5347, and shall be entitled to other property or the value of the same in money, and that it shall be the duty of the administrator to set apart to her the money, if she elects to take money, to be paid in proper order.

The widow has elected to take, and has received of the total allowance to her of $1800, certain specific articles of property listed in the return of the appraisers, receipt of which she admits, but says the value thereof was not to exceed $180, and she demands of the administrator the balance of $1620 in money. Unless, therefore, she has for some reason waived her right to demand this money, or is estopped now to claim it, the judgment of the county court is manifestly wrong. Previous to the filing of her amended petition, the administrator had obtained an order of court to sell 80 acres of land belonging to the estate, for the purpose of paying debts, the personal property, or the money obtained from the sale thereof, not being sufficient for that purpose. Under the permissive order the administrator had entered into a contract of sale with one Duncan for the sale of the real estate, which the court seems to have approved, and in the contract of sale there was a

provision whereby Duncan agreed to execute to the widow
a lease, for the period of five years, of a five acre tract
carved out of the property sold, on which there were a
small house, barn and other buildings. The widow was not
a party to the contract; had nothing whatever to do with
its making or execution, but it is said that she knew of it
and read it before it was executed, and made no objection.
It is also said that this lease was accepted by the widow in
lieu of the balance due her under the order of allowance.
Such claims are made in both answers to plaintiff's peti-
tion for allowance, but there is no evidence in the record
whatever which tends to sustain these answers on this
issue. The administrator, himself, in his testimony says
that he did not state to Mrs. Hale that this lease, or the
right to live on the land that was sold to Duncan, was to
be accepted by her in lieu of any part of the widow's al-
lowance that she might be entitled to. He says they never
discussed, or talked with each other about a widow's allow-
ance, either in connection with the sale of this land, or at
any other time. The purchaser, Duncan, says that he does
not know of such arrangement. The widow testified ab-
solutely that she did not know at the time this contract
of sale was made that she was entitled to a widow's allow-
ance, and that she never was asked to accept, never ac-
cepted, and never intended to accept, the lease which the
contract of sale provided for, in lieu of any part of a
widow's allowance. The courts guard with jealous care
the rights of a widow and minor children in such cases.
The statutes cited give to the widow the absolute right and
power to make a selection in satisfaction of her allowance,
either in whole or in part, of the property set aside to her
by the appraisers, or to take the entire amount in money, or
a part in money and a part in property. Neither the ad-
ministrator, nor the county court sitting in probate, may
compel her to relinquish this statutory right of election,
and they have no power to make the election for her. It
is clear that there was no waiver by the widow of her rights
of election under the statute. There can be no waiver

without intent. She is not estopped by anything that she has said or done. There is no estoppel by deed or record, and no estoppel *in pais* has been established by the evidence. The estate, represented by the administrator, has not been injured or lost anything by reason of the alleged neglect of the widow either to assert or demand her allowance before she filed her amended petition.

It is true that there was some evidence tending to show that the widow knew of, and approved, the provision in the contract of sale by which she was to have a lease of the portion of the premises for five years. Judging by her evidence and from the record as a whole, it would seem that she is wholly unfamiliar with business, had no knowledge of her legal rights in the premises, and was not informed by the administrator, or by the court, of her right to a widow's allowance, and had not consulted an attorney till about the time of the filing of her petition. She testified that Mr. Duncan, the purchaser, told her that she might remain on the place for a period of five years and she supposed this was what she calls a gift from him, and that he was making it, not because he was obliged to do so, or that she was accepting it in lieu of a widow's allowance, which, as we have said, she did not know about at the time. She offered at the hearing to vacate the premises at any time on request. Duncan says that he had no use for these buildings which were included in the lease and could make no use of them, and evidently considered them of slight value and of not much rental value. The circumstances all tend strongly to show, particularly in view of the fact that the administrator admits that the subject of widow's allowance was never mentioned by him, that she believed that Duncan, the purchaser, for some reason satisfactory to himself, wanted to give her free use, for five years, of the premises. He said that the subject matter of the lease was of no use to him, and he was willing that she should occupy the same, which was a part of the farm on which she had lived before her husband died, upon the condition that she would permit him to

make certain use of the stables and other parts of the property when he needed them in connection with his farming of the tract as a whole. Upon the uncontradicted evidence, we hold in favor of the widow on the question of acceptance of this lease as a part of her allowance. She did not accept. There will be no further hearing on this issue after the cause is reversed.

A further claim is made by the administrator that the widow received and retained certain other articles of property than those which she admits she received that were included in the order of allowance. The testimony of the widow was, that these articles of property which the administrator says she received, belonged to her and not to the estate. The administrator said he did not know to whom they belonged, but finding them upon the farm where the deceased was living at the time of his death, he listed them as the property of the estate. The testimony does not support the court's finding that this property belongs to the estate. But in fairness to the creditors, the administrator, and to the widow, we think that the judgment should be reversed in its entirety, and that these disputed questions as to the ownership of these other articles of property, and the value of all property already turned over to her, should be determined upon evidence that the parties may produce at the hearing. The judgment, therefore, is reversed and the cause remanded, with instructions to the county court to set aside its judgment heretofore entered, and to order another hearing, upon due notice to the parties concerned, for the purpose only of determining: First: The value of the two cows, two hogs and pony which the widow has already received. Second: The ownership of the disputed articles of personal property which the widow admits she received, of which she claims ownership, and which the administrator says belong to the estate, and if the ownership thereof is found to be in the estate, then to ascertain their value, and, upon the findings, to enter judgment in favor of the plaintiff in error here, the widow, directing the administrator to pay

to her the sum of $1800 less the value of all the property of the estate actually received and retained by her. No other question of fact shall be tried. Plaintiff in error to have her costs, both here and below.